IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL VASYL HARIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-845-SLR |
| | ) |
| GEORGE VENIZELOS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 23rd day of May, 2013, having reviewed the motion to dismiss filed by defendants and the papers submitted therewith;

IT IS ORDERED that said motion to dismiss (D.I. 3) is granted, as follows:

1. **Background.** Plaintiff Michael Vasyl Harik, proceeding pro se, claims that Federal Bureau of Investigation ("FBI") employees[1] violated his Fourth Amendment rights through an unwarranted invasion of privacy. (D.I. 1 at 1) Specifically, plaintiff states that the FBI used "GPS and other monitoring means without a showing of probable cause," which violated his expectation of privacy from unlawful searches. (Id.)

---

[1] Plaintiff names the following as defendants: George Venizelos, FBI Special Investigations Unit, Head/Deputy of FBI Human Resources, FBI Investigation Units for Minors, FBI Unit for East European Cases, FBI Electronic Surveillance Unit, FBI External Surveillance Unit, FBI Transmission Center, Dispatching Office, FBI Unit for the Most Wanted Criminals, Special Agents in Charge of the listed FBI units in Philadelphia, and Venizelos, Jr. Defendants assert that the named FBI entities do not exist but that the complaint seems to be directed at employees in the FBI's Philadelphia office. (D.I. 4 at 5)

Prior to 2010, plaintiff claims that defendants caused his son to be "bullied and harassed through children of FBI associates since 2007 in Middle School." (*Id.* at 2) Plaintiff then alleges that defendants harassed him since August 1, 2011 and his son since March 2010 through July 2012 through GPS monitoring and radio wave transmissions that altered their thoughts and decisions. (*Id.* at 2-5) He claims that this monitoring occurred "on per second or sub-minute intervals (including the time of using bathroom and toilet)" and included "microparticles/clusters functionally akin to a hearing aid and obstructing, perturbing and interfering with . . . my thoughts and my decision making even about small and insignificant things." (*Id.* at 2, 3) Additionally, plaintiff states that defendants defaced his vehicle and entered into the vehicle to spray "various highly irritant aerosols and skin damaging droplets . . . and microscopic electromagnetically conductive microparticles (with the glass-like shine in the sunlight)." (*Id.* at 2, 5-6)

2. Plaintiff attributes a wide variety of symptoms to the FBI's monitoring and radio transmissions, including "persistent difficulty falling asleep, as having insomnia and waking up in the morning with 'bags' under my eyes," "memory problems indicative of some brain damage" evidenced in plaintiff's inability to "recall the name of George Orwell, the author of a novel '1984,'" and the fact that his "son could not recall many details about his school days." (*Id.* at 4) Plaintiff bemoans the fact that he looks "like a man in his mid-50s, while two years ago, [he] looked like a man in his late 30s," which he attributes to the FBI's "prolonged abuses." (*Id.* at 3) Plaintiff also claims that as a result of the "highly irritant aerosols of acidic microparticles," he experienced "dry cough, airways and eyes irritation," had to ("after a clear sense of breathing fine airborne

microparticulates") "open windows and move my car," and experienced "albino-like patches of abnormally white skin" similar to the effects of exposure to "the phenolic type and other chemical compounds." (*Id.* at 5) Furthermore, plaintiff contends the FBI defaced his car "in a particularly degrading manner by an unusual amount (in terms of area concentration) of the bird-like extremity soiling." (*Id.*) Plaintiff also asserts that a scratch "was made far enough from the edges of my car indicating that this defacing was done by an adult (most likely by a police informant) and not a child." (*Id.*)

    3. Plaintiff had previously filed court complaints of discrimination in July 2005 and July 2007. (*Id.* at 2) He asserts that the harassment of his son and of him is a retaliatory response to those court proceedings and is discriminatory. (*Id.* at 3, 7) Furthermore, plaintiff asserts that during a 2011 domestic court hearing in Pennsylvania, the FBI aided in the falsification of court documents that resulted in a state court petition for contempt against him. (*Id.* at 6)

    4. Plaintiff first seeks an injunction of GPS and microparticle monitoring against the FBI. (*Id.* at 7) Additionally, plaintiff seeks monetary damages for the following causes: pain and suffering of plaintiff's son[2] in an unspecified amount; compensation for plaintiff's losses of earning power and professional standing from defendants' electronic investigations and from defendants labeling him a criminal for the period from August 1, 2011 to July 2012 in an unspecified amount; plaintiff's pain and suffering from August 1, 2011 to July 2012 in an unspecified amount; loss of plaintiff's car's

---

[2]Plaintiff's son is not listed as a party to the action.

value in the amount of $3,000; and the cost of plaintiff's legal support and attorney fees for pending cases.[3] (*Id.* at 8)

5. Currently before the court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (D.I. 3) As the Rule 12(b)(1) grounds for dismissal are dispositive, the court does not address the Rule 12(b)(2) or 12(b)(6) grounds.

6. **Standard of Review.** Not only may the lack of subject matter jurisdiction be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion. *See Moodie v. Fed. Reserve Bank of NY*, 58 F.3d 879, 882 (2d Cir. 1995). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

7. Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). *See* 2 James W. Moore, Moore's Federal Practice § 12.30[4] (3d ed.

---

[3]Plaintiff's response to the motion to dismiss attempts to adds allegations of "an unlawful parking ticket involving the ethnic- and religion-based discrimination of Plaintiff, which was assisted by the GPS tracking" and a "long list of incidents of the internet use obstruction in Delaware from the federal backbone communication system under FBI's orders," including "obstructions . . . directed to the facebook audience," "denigrating followers with either the sex context or pornographic content attaching to my Twitter," and "abnormal delays during the virus scan" that "demonstrate that [plaintiff's] computer files have been tempered [sic] with . . . ." (D.I. 6 at 8; *see also id.*, ex. 11)

4

1997). Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. *See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

8. **Discussion**. Defendants aver that the allegations in plaintiff's complaint are insubstantial and frivolous on their face.[4] (D.I. 4 at 3) "'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' . . . [and] 'obviously without merit.'" *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (citations omitted). A claim is insubstantial or frivolous when there is "'no room for the inference that the questions sought to be raised can be the subject of controversy.'" *Id.* (quoting *Hannis Distilling Co. v. Baltimore*, 216 U.S. 70, 80 (1909)). Defendants contend that plaintiff's claims constitute "'bizarre conspiracy theories'" or "'fantastic government manipulations of the will or mind . . .'" that meet the threshold "essentially fictitious" standard for a Rule 12(b)(1) dismissal. (D.I. 4 at 3) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)).

9. Here plaintiff presents a series of events that he believes the FBI orchestrated. (D.I. 1) When viewed collectively, plaintiff's claims comprise a conspiracy theory about the FBI and its activities. (*Id.*) Plaintiff alleges the FBI is behind everything from his son's school bullying to bird excrement found on his car. (*Id.* at 2, 7) He

---

[4]The defendants do not allege that the claims should be dismissed under Rule 12(b)(1) for being "immaterial and made solely for jurisdictional purposes." *See Kehr Packages*, 926 F.2d at 1408 (citations omitted).

further contends that the FBI had a hand in his court proceedings, implicating the clerk who filed the petition for contempt against him. (*Id.* at 6) The Third Circuit has previously found that claims of fantastic government conspiracies can be dismissed under Rule 12(b)(1). *See DeGrazia v. FBI*, 316 F. App'x 172, 173 (3d Cir. 2009) (dismissing a claim about the FBI conducting a Nazi-designed genetic experiment on the plaintiff).

10. The thrust of this case mirrors that of the *DeGrazia* case, which included a complaint with a 128-page supporting brief about the government's experimentation on DeGrazia and on others. *See DeGrazia v. FBI*, 2008 WL 2456489 at *1-2 (D.N.J. 2008) (detailing the wide variety of experimental effects on plaintiff and the deception of the government by Nazi agents). As in *DeGrazia*, plaintiff's claims rest on his allegations of discriminatory treatment. (D.I. 1 at 7) However, rather than allege that he received an experimental injection at the hands of the government, plaintiff instead alleges that he endured constant monitoring and mind control, with the occasional act of vandalism. (*Id.* at 2)

11. In *Best v. Kelly*, prisoners in a correctional facility sued the mayor of the city and the director of the city department of corrections for terminating a drug treatment program and replacing it with a new contractor, in violation of their due process rights. 39 F.3d at 329. That court found that the prisoners' claims were "not clearly fanciful claims . . . [such] that dismissal for lack of jurisdiction under Rule 12(b)(1) [was] warranted." *Id.* at 330-31. For claims to be dismissed pursuant to Rule 12(b)(1), they must be "flimsier than 'doubtful or questionable' – they must be 'essentially fictitious.'" *Id.* at 330 (citations omitted). Although plaintiff supports his claims with documentation

6

on GPS monitoring, transcranial magnetic stimulation technology, and phenol dyes or burns exist, plaintiff's case is distinguishable from the facts of *Best* because, while the claims in *Best* clearly fell away from the "essentially fictitious" standard, plaintiff's claims that the FBI directed all of its technologies for the express purpose of harassing him are clearly fanciful.[5] *See id.*

12. **Conclusion.** For the aforementioned reasons, the court finds that the allegations in plaintiff's complaint "'are so attenuated and unsubstantial as to be absolutely devoid of merit, . . . wholly insubstantial, . . . obviously frivolous, . . . plainly unsubstantial, . . . or no longer open to discussion.'" *DeGrazia*, 316 F. App'x at 173.

                                              _____
                                                       United States District Judge

---

[5] Plaintiff's response to the motion to dismiss further bolsters the incredulity of his complaint, as he attempts to attribute parking tickets, internet malfunctions, a potential computer virus problem, and even pornographic content to the FBI. (D.I. 6 at 8)